UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL T. COOPER,

          Plaintiff,

       v.                                                            Case No. 20-C-1500

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Michael Cooper filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Cooper asserts that the decision of the administrative law judge (ALJ) is flawed and requires reversal for a number of reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

Cooper filed an application for a period of disability and disability insurance benefits on August 2, 2019, alleging disability beginning March 30, 2018. He listed post-traumatic stress disorder (PTSD), thoracic spine pain and dysfunction, lumbar spine pain and dysfunction, bilateral lower extremity radiculopathy – static nerve, sleep apnea, depression, anxiety, chronic obstructive pulmonary disease (COPD), and bilateral knee pain and dysfunction as the conditions that limited his ability to work. R. 218. After the application was denied initially and on reconsideration, Cooper filed a request for an administrative hearing. ALJ Gary Freyberg held a hearing on April

7, 2020. Cooper, who was represented by counsel, and a vocational expert (VE) testified. R. 32–79.

At the time of the hearing, Cooper was 42 years old and lived in a house in Redgranite, Wisconsin with his wife and his eighteen-year-old son. R. 34, 42. Cooper testified that he completed high school. R. 41. He worked for three years as an auto mechanic at a car dealership. R. 242. In 2004, Cooper joined the Army Reserves and was deployed to Iraq in 2005. After leaving the military in 2007, Cooper worked various jobs, including as a technical writer for a defense contractor, doing flood/fire damage cleanup for insurance companies, farm animal removal (loading and driving truck), as a security officer, and then as a correctional officer at Redgranite Correctional Institution. *Id.* Cooper testified that he left his job as a correctional officer at the end of March 2018 because he couldn't be around other people and found himself challenging inmates. R. 52. He then worked for a couple of months as a tree tagger. R. 43–44.

Cooper stated that he has PTSD and flashbacks. R. 58. He indicated that he is always on alert, makes sure that he sees everything coming and going near his property, and spends all day assessing every situation around him. R. 45, 58. He testified that he spends most of his time in his house and that he has dogs to make sure no one comes around his house. He walks his dogs on the property for fifteen minutes a day and patrols his property 10 to 12 times a day. R. 45–48. He stated that he does not trust people coming to his house and that not even his family has visited the home. R. 57. During the day, he watches television and knits, crochets, or sews. R. 45–47. Cooper stated that he does not cook or clean and that his wife drives him to the VA in Milwaukee because he does not drive often. R. 49–50. He testified that he goes a couple of days without sleeping twice a week and has nightmares every night. R. 55, 60. Cooper stated that he cannot walk on gravel or open doors that would cause a rush of hot air because "it puts [him] right back

2

in Iraq." R. 60. He testified that he stopped going to therapy at the end of 2019 because it made his PTSD worse. R. 69.

As to his physical impairments, Cooper testified that he has a shooting pain and numbness that goes from the back of his legs to his lower back at least once or twice a day as well as back pain generally. R. 65. He reported that he can sit for ten to fifteen minutes and then has to walk around for ten to fifteen minutes and that he can only stand for ten to fifteen minutes. R. 63–64. Cooper stated that he has started using a cane. R. 66. He also testified that he had carpal tunnel and trigger finger. R. 67–68.

In a fifteen-page decision dated April 22, 2020, the ALJ concluded Cooper was not disabled. R. 13–27. Following the Agency's sequential evaluation process, the ALJ found that Cooper met the insured status requirements of the Social Security Act through December 31, 2023, and that he has not engaged in substantial gainful activity since March 30, 2018, the alleged onset date. R. 15. Next, the ALJ determined Cooper had the following severe impairments: degenerative disc disease, obesity, bilateral carpal tunnel syndrome, bilateral knee impairment, and post-traumatic stress disorder. *Id.* The ALJ found that Cooper does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

After reviewing the record, the ALJ determined Cooper had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) but with the following limitations: "he can occasionally operate foot controls; occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl. He can frequently handle and reach bilaterally. He must avoid all exposure to extreme heat and walking on gravel. He is limited to employment in a low-stress job, defined as having only occasional decision making required and only occasional changes in the work setting. He is limited to work where there is no production

3

rate or pace work such as an assembly line with no hourly production quotas, but end-of-day quotas are permissible; he is limited to no contact with the public, and only occasional, brief, and superficial contact with coworkers and supervisors, with no tandem tasks." R. 19. The ALJ found that Cooper was capable of performing past relevant work as a marker II. He noted that this work does not require the performance of work-related activities precluded by Cooper's RFC. R. 25. Based on these findings, the ALJ determined Cooper was not under a disability from March 30, 2018, through the date of the decision. R. 26. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Cooper's request for review. Thereafter, Cooper commenced this action for judicial review.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f).

This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S.

5

at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Assessment of Subjective Symptoms**

Cooper argues that the ALJ's evaluation of his symptoms is not supported by substantial evidence. The social security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by his impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be

6

expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of his pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539. "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester*, 920 F.3d at 510.

The ALJ found that Cooper's medically determinable impairments could reasonably be expected to cause his alleged symptoms but not to the degree alleged. The ALJ noted that Cooper alleged that he cannot sit, stand, or walk for more than 10 to 15 minutes; he has shooting pain and numbness in his legs; he stumbles and falls; he cannot do repetitive lifting of even minimal weight; he does not squat, bend, or kneel because of pain; and reaching causes shooting pain in his back and legs. R. 20. The ALJ also observed that Cooper testified that he has back pain that worsens

7

if he coughs, he needs to get up and walk around after sitting for 10 to 15 minutes because of back and leg pain, he can stand for 10 to 15 minutes before needing to rest because of back and leg pain, and he uses a TENS unit two or three times a day and a cane sometimes for walking. *Id.* As to his PTSD, the ALJ recognized that Cooper alleged he cannot be around people or have people behind him, is hypervigilant and always waiting for something to happen, has violent mood swings and blows up if things do not go right, cannot use an oven because it is a trigger for past trauma, stopped working as a corrections officer because he was provoking inmates to attack him and could not be around so many people, does not sleep well because his mind races, sometimes stays up for two days, has nightmares every night, has daily flashbacks that last an hour or two, and cannot walk on gravel because it triggers past trauma. R. 21.

The ALJ found that the objective medical evidence and Cooper's treatment history was not entirely consistent with his allegations regarding the severity of his physical functional limitations. The ALJ explained that, while Cooper alleges extreme limitations in standing, walking, sitting, and using his upper extremities, physical exams generally showed grossly intact motor and sensory findings. He stated that care providers observed that Cooper has normal gait and does not use an assistive device for walking and that Cooper reported near to total resolution of his carpal tunnel syndrome symptoms after surgery. The ALJ noted that the mental status exam findings generally demonstrated intact cognition for familiar and unhurried mental tasks and adequate tolerance for some limited social interaction, which are inconsistent with Cooper's allegations of disabling limitations in interacting with others, completing tasks, and managing himself. R. 20.

Cooper asserts that the ALJ did not explain how his treatment impacted the consistency of his subjective allegations. But the ALJ thoroughly discussed Cooper's treatment history. The ALJ noted that, while physical exams on occasion showed limited range of motion of the back and knees, positive straight leg raise tests, mildly decreased sensation in the lower extremities, and

8

mild radiculopathy, physical exams also generally showed grossly intact motor and sensory findings and no evidence of pain with weight bearing. He also noted that Cooper used a TENS unit for trial treatment of back pain in January 2019 and that Cooper requested a single point cane "just in case." R. 20. At the same time, the ALJ observed that Cooper did not pursue alternate treatment modalities, such as use of a knee brace, therapeutic injections, or surgical intervention, *id.*, which one would expect him to do if the pain and incapacity were as severe as he claimed.

With respect to the limitations to Cooper's upper extremities, the ALJ indicated that Cooper sought treatment for bilateral hand pain and numbness in October 2019, and physical exam showed positive Tinel's and Phalen's signs. R. 21. Cooper was given bilateral wrist splints and instructed in using them, and the ALJ noted that care providers stated that no further physical therapy was indicated. The ALJ observed that, during a November 2019 consultation, physical exam of the upper extremities showed tenderness of the wrists and palms, diminished sensation on the right, and positive Phalen's and Durkan's signs bilaterally, as well as full range of motion of the wrists and palms, no atrophy, intact sensation on the left, and negative Tinel's and basal joint grind tests bilaterally. He noted that, in January 2020, Cooper underwent bilateral carpal tunnel surgeries, and that during a follow-up visit, Cooper reported a near to total resolution of preoperative symptoms and physical exam showed intact motor function in the median nerve distribution.

As to the treatment related to Cooper's mental health conditions, the ALJ noted that Cooper participated in mental health counseling for treatment of post-traumatic stress disorder, including a residential program in July and August 2018, reporting symptoms of poor sleep, nightmares, hypervigilance, increasing anger and feeling overwhelmed. The ALJ observed that Cooper was prescribed psychotropic medication and that care providers at times observed that he was tearful during counseling visits. He stated that mental status exams at times showed depressed and

frustrated mood and anxious and restricted affect but also generally showed good hygiene and grooming, cooperative and reasonable behavior, alert and attentive attitude, good eye contact, normal speech, intact language, normal and coherent thought process and associations, no unusual psychomotor activity, fair to good insight and judgment, intact memory and cognition, and average fund of knowledge.

The ALJ noted that during residential treatment, care providers generally observed that Cooper was attentive, pleasant, and cooperative during group therapy activities, enjoyed the group, and socialized with staff and group members. He stated that, at the end of residential treatment, Cooper reported that his mood was better and that he learned coping skills. The ALJ indicated that Cooper was discharged from individual psychotherapy in January 2020 because he had not been seen in over six months. He noted that, during an August 2018 psychological evaluation, mental status exam showed intensely anxious behavioral tension wringing hands, ungroomed facial hair, and mild attentional difficulties but also showed adequate hygiene, full orientation, and intact long-term memory. R. 22.

Cooper emphasizes his accounts of excessive hypervigilance, daily flashbacks, violent mood swings and anger, panic attacks, auditory and visual hallucinations, paranoia, passive suicide ideation, avoidance of crowds and others, and "blowing up" when confronted with stress. Dkt. No. 25 at 3. But despite these reported symptoms, the ALJ noted that there was "an absence in the record of any episodes of decomposition or the need for emergency psychiatric treatment." R. 18. There was no evidence that he had any serious difficulty driving his son to and from school or to his biweekly meetings. "There were no tickets, and no accidents or near-misses noted in the record or during testimony." *Id.* The ALJ discussed the medical evidence in the record, including Cooper's residential care. His consideration of Cooper's treatment history was consistent with SSR 16-3p.

The ALJ also found that Cooper's activities of daily living were inconsistent with his allegations of disabling pain and mental health symptoms. Cooper asserts that the ALJ improperly evaluated his activities of daily living. While an ALJ must consider a claimant's daily activities as one factor in evaluating intensity and persistence of pain, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ cannot place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362–63 (7th Cir. 2006). Cooper argues that the ALJ failed to explain how his daily activities translated into light work and did not analyze his qualifications on his daily activities, which better support his alleged limitations. But the ALJ did not equate Cooper's ability to perform his daily activities with an ability to work full time. Instead, he assessed Cooper's reported activities to determine the credibility of his statements concerning the intensity, persistence, and limiting effects of his symptoms. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of disability and pain.").

The ALJ found that the extent of Cooper's activities of daily living, including regularly riding a motorcycle, driving 10 to 20 miles multiple times a week, walking around a half-acre property up to 12 times a day, doing crafts like woodworking, knitting, and crocheting, shopping by computer, and handling personal finances, is inconsistent with his allegations of disabling pain and mental health symptoms. R. 20. He explained that, despite Cooper's reported limitations, all of these activities require an ability to stand and walk for stretches, lift and carry light items, use the hands for fine and gross manipulation, and complete familiar mental tasks at an unhurried pace

with brief social interaction. R. 22. The ALJ did not conclude that Cooper's admitted daily activities demonstrated that Cooper could work full time; instead, he found that the activities were inconsistent with Cooper's extreme statements about his limitations. It is not unreasonable to conclude that someone experiencing the limitations Cooper claimed would not be able to perform his daily activities. The ALJ properly relied on Cooper's admitted daily activities to assess his statements concerning the intensity, persistence, and limiting effects of his impairments, consistent with the applicable rules.

Cooper asserts that the ALJ did not address his service-connected disability. The Department of Veterans Affairs found that Cooper's PTSD is 100% disabling as of September 1, 2018. R. 285–90. A decision made by "any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled" is not binding on the Commissioner, however. 20 C.F.R. § 404.1504. While the Agency "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision," it "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled." *Id.* The ALJ considered the opinion of Dr. Heather Meggers-Wright, which was submitted as part of Cooper's application for VA disability benefits. Cooper does not assert that the ALJ did not consider the evidence underlying the VA's decision. Instead, he argues that the ALJ should have given more weight to the VA evidence relating to his mental impairment. But it is not the role of the Court to reweigh evidence. The ALJ reasonably evaluated Cooper's VA disability status in accordance with § 404.1504.

In this case, the ALJ acknowledged that Cooper had impairments that impacted his ability to work but not to the degree he alleged. The ALJ applied the regulations governing the assessment of Cooper's symptoms and provided adequate support for his findings. Cooper cites to no evidence

that the ALJ ignored or failed to consider. The fact that reasonable factfinders may reach a different conclusion is not a reason to overturn the ALJ's credibility determination. Because the ALJ built an accurate and logical bridge in assessing Cooper's statements concerning his symptoms, his conclusions are not patently wrong and do not necessitate remand.

**B. Assessment of Medical Opinion**

Cooper also argues that the ALJ erred in evaluating the medical opinion of Dr. Heather Meggers-Wright. Under the new regulations, an ALJ is not required to give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinions by considering the following factors: supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2).

Dr. Meggers-Wright completed a PTSD disability benefits questionnaire on May 31, 2019, as part of Cooper's application for VA disability benefits. R. 1065–75. She noted that Cooper arrived early for the appointment, was casually dressed, and had adequate hygiene with an ungroomed beard. She observed an intensely anxious mood, behavioral tension, wringing hands, and an open and cooperative attitude. Dr. Meggers-Wright noted that Cooper reported visual hallucinations that are trauma-related and associated with high anxiety. She indicated that suicidal ideation is not imminent, that Cooper was fully oriented during the assessment, that his long-term memory was intact, and that he had mild attentional difficulties on examination. R. 1071. Dr. Meggers-Wright opined:

> The Veteran is currently experiencing severe symptoms of PTSD that would extremely impair occupational functioning. He is currently extremely impaired in his ability to safely interact with other people due to irritability and rage with the urge/fear of harming himself or others. His interpersonal anger is likely to lead to unsafe working conditions for himself, coworkers, and members of the public he

13

> may become engaged with. He is currently extremely impaired in work pace and productivity due to severe anxiety. His hypervigilance impedes attention to routine and non-routine tasks and his obsessive checking behaviors would be an impediment to finishing work tasks accurately and at a pace comparable to workers without severe PTSD.

R. 1072.

The ALJ concluded that Dr. Meggers-Wright's opinion was unpersuasive. He noted that the opinion is inconsistent with the record as a whole, which he found generally demonstrated less extreme mental functional limitation, "including mental status exam findings generally showing good hygiene and normal speech, intact language, normal and coherent thought process and associations, no unusual psychomotor activity, fair to good insight and judgment, intact memory and cognition, and average fund of knowledge." R. 24. He reasoned that, although the opinion was somewhat supported by the mental status exam findings of anxious mood, behavior tension, and mild attentional difficulties, it appeared to be primarily based on Cooper's subjective reports of symptoms. The ALJ also stated that the opinion "is not well-explained." *Id.*

Cooper asserts that the ALJ erred in finding Dr. Meggers-Wright's opinion unpersuasive because it is primarily based on his subjective reports of symptoms. The Seventh Circuit has recognized that "[m]ental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). In this case, Dr. Meggers-Wright did not assess Cooper's self-reports "through the objective lens of her professional expertise." *Id.* She did not cite to any treatment notes that supported her extreme limitations, and Cooper does not point to anything in the questionnaire indicating that she used her training or expertise to determine whether Cooper accurately reported his symptoms. The implication of Cooper's argument is that whatever a psychologist puts in her report must be found to be persuasive, even if it is only based on the

14

claimant's reports and is inconsistent with other evidence in the record. Such a rule contravenes the regulations stating that the ALJ is responsible for evaluating the evidence in the record and resolving conflicting evidence. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002); 20 C.F.R. § 404.1520c. It also ignores the other reasons the ALJ gave for his findings and the fact that three other psychologists did not find that Cooper's impairment was so severe.

Cooper argues that the ALJ did not explain why the normal examination findings outweighed the abnormal ones in assessing the persuasiveness of Dr. Meggers-Wright's opinion. He also asserts that the ALJ is not qualified to interpret how the totality of the normal and abnormal mental status examinations impacted his functionality. Under the social security regulations, the ALJ must evaluate whether a medical opinion is supported or consistent with the record. § 404.1520c. The ALJ's decision in this case includes a detailed summary of the medical evidence in the record, and he explained why he found Dr. Meggers-Wright's opinion to be inconsistent with the record evidence. To the extent Cooper disagrees with the ALJ's summary of the medical evidence, an ALJ is "not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper*, 712 F.3d at 363. The ALJ discussed Cooper's normal and abnormal mental status examination findings, and his summary and determinations are supported by substantial evidence.

Cooper also asserts that the ALJ's conclusion that Dr. Meggers-Wright's opinion was "not well explained" is not supported by substantial evidence. He contends that the ALJ should have contacted Dr. Meggers-Wright for clarification. Under 20 C.F.R. § 404.1520b, the ALJ "may recontact [a claimant's] treating physician . . . or other medical source" if the evidence is incomplete or inconsistent. In this case, the ALJ did not find that Dr. Meggers-Wright's opinion was incomplete or inconsistent; he found that her opinion was not well explained. Indeed, Dr. Meggers-Wright merely summarized Cooper's reported symptoms, checked a box indicating that

15

Cooper had total occupational and social impairment, checked a series of boxes indicating various symptoms from the list provided in the questionnaire, and noted that Cooper had extreme limitations without citing specific treatment notes to support her conclusions. There is no explanation of the basis for the findings that he had such symptoms. As the ALJ noted, there is a general absence in the record of longitudinal observations or mental status exam findings indicating serious difficulties with attention or concentration." R. 18.

Cooper maintains that the ALJ did not explain why Dr. Meggers-Wright's opinion was unpersuasive when he found the state agency doctor's opinions partially persuasive. Catherine Bard, Psy.D., and Susan Donahoo, Psy.D., found that Cooper has a moderate limitation in the ability to interact with others and a mild limitation in the ability to concentrate, persist, or maintain pace and adapt or manage oneself. They also found that Cooper can sustain concentration on simple or detailed tasks for two hours at a time; can work in a group setting but would do best in a setting requiring limited cooperative activity; should have limited public contact; is able to control his behavior sufficiently to accept instruction and supervision; and may have difficulty with sudden or frequent changes but retains the ability to deal with incremental change in a generally stable job situation. R. 81–95; 97–111. The ALJ found these opinions partially persuasive because they are generally supported by the objective medical evidence and explanations. R. 23. He explained that their opinions are generally consistent with the record as a whole, including mental status exam findings at times showing depressed and frustrated mood and anxious and restricted affect but also generally showing good hygiene and grooming, cooperative and reasonable behavior, alert and attentive attitude, good eye contact, normal speech, intact language, normal and coherent thought process and associations, no unusual psychomotor activity, fair to good insight and judgment, intact memory and cognition, and average fund of knowledge. R. 23–24. The ALJ nevertheless concluded that the evidence in the record

16

demonstrates the need for additional mental functional limitations. R. 24. The ALJ sufficiently articulated his reasons, with supporting citations to the record, for his finding that Dr. Meggers-Wright's opinions were unpersuasive and that the state agency consultants' opinions were partially persuasive. Cooper's disagreement with those reasons is not grounds to overturn the Commissioner's decision.

**C. RFC Assessment**

Cooper asserts that the ALJ erred in assessing his RFC. A claimant's RFC specifies the most that a claimant can do despite the limitations caused by his physical and mental impairments. 20 C.F.R. § 404.1545(a)(1); *see Pepper*, 712 F.3d at 362 (noting that the RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week"). At the hearing level, it is the responsibility of the ALJ, not a medical expert, to determine the claimant's RFC. § 404.1546(c). The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the record, including severe and non-severe impairments as well as medical and non-medical evidence. § 404.1545(a), (e). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The Court's task is to "determine whether substantial evidence supports the ALJ's RFC conclusion." *Pepper*, 712 F.3d at 363.

The ALJ found that Cooper has the RFC to perform light work except he can occasionally operate foot controls; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; can frequently handle and reach bilaterally; must avoid all exposure to extreme heat and walking on gravel; is limited to employment in a low-stress job, defined as having only occasional decision making required and only occasional changes in the work setting; is

17

limited to work where there is no production rate or pace work such as an assembly line with no hourly production quotas, but end-of-day quotas are permissible; and is limited to no contact with the public, and only occasional, brief, and superficial contact with coworkers and supervisors, with no tandem tasks. R. 19.

Cooper argues that the ALJ failed to explain how the evidence supports the RFC conclusion and that the ALJ did not account for his reactions to stress in accordance with SSR 85-15. SSR 85-15 cautions that, because reactions to the demands of work or stress are highly individualized, ALJs must thoroughly evaluate a claimant's mental impairments. In other words, the ruling simply emphasizes "the importance of thoroughness in evaluation on an individualized basis." SSR 85-15, 1985 WL 56857, at *5. The ALJ relied upon Cooper's medical history, the opinion evidence, his testimony, and his activities of daily living to assess the RFC in this case. The ALJ limited Cooper to low-stress work requiring only occasional decision-making, only occasional changes in the work setting, no production rate or pace work, no contact with the public and only brief and superficial contact with co-workers and supervisors. R. 19. He explained that he accounted for Cooper's PTSD and stress by limiting him to low-stress work not involving production rate or pace work, with limited social interaction, and no exposure to extreme heat or walking on gravel. R. 22.

Cooper asserts that the state agency consultants' opinions do not support the specific limitations in the RFC assessment because the ALJ found their opinions only partially persuasive. That's true; as previously noted, the ALJ concluded that additional mental functional limitations were warranted and explained why. R. 24. There is no requirement that an ALJ adopt in whole any one opinion from a medical provider in assessing an RFC. *See Schmidt*, 496 F.3d at 845. Where, as here, medical sources differ as to a claimant's RFC, the ALJ does not err in concluding

that the truth lies somewhere within the range of opinions offered, as long as he reasonably explains how he arrived at his conclusion. The ALJ did so here. R. 24.

Cooper also argues that the ALJ erred by inquiring about a time off task limitation but not addressing such a limitation in his decision. In this case, the ALJ asked the VE a number of hypothetical questions to develop the record and determine the number of jobs a claimant can perform based on those limitations. Although the VE testified that off task time of fifteen percent would be work preclusive, no doctor opined that any time off task limitation was warranted, and the ALJ did not find from other evidence that Cooper had such a limitation. Cooper fails to explain why under these circumstances the ALJ erred in failing to include one in the RFC.

Cooper's challenges to the ALJ's decision essentially ask the Court to reweigh the evidence and reach a different conclusion than the ALJ. This is not the Court's role, however. Judicial review is intended to be deferential, and the final decision of the Commissioner will be upheld if the ALJ applies the correct legal standards and supports his decision with substantial evidence. 42 U.S.C. § 405. The ALJ provided a clear and logical bridge from the evidence to his conclusions, and substantial evidence supports the ALJ's RFC assessment. Accordingly, remand is not warranted on this basis.

## CONCLUSION

For these reasons, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of March, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge